[No. 1359.]

THE STATE OF NEVADA ex rel. J. A. BLOSSOM, Relator, *v.* R. L. HORTON, STATE CONTROLLER, Respondent.

ARTESIAN WELLS—BOUNTY—AMENDMENT OF STATUTE.—The act of March 5, 1887, Sec. 1, provided for the payment of bounties by the state for the sinking of artesian wells of a given capacity. The act of March 7, 1889, amended the former act by fixing different bounties to be graduated according to the depths of wells, and providing that "no two wells shall receive a bounty if located in the same county," and further providing that "where two or more wells within the prescribed limit apply for a bounty, the well which first furnished the amount of water required by this act shall be entitled to the bounty." The amendment was made by enacting that the former act "is hereby amended so as to read as follows," setting forth section 1 of the act of 1887, as amended, without any words or repeal. *Held*, that the effect of re-enacting the section of the former act with amendments incorporated therein was not to repeal and re-enact it, but that it continued uninterruptedly in force, and that the amendatory act was to be construed in connection with it, so that where a well was sunk and a bounty granted for it under the original act, another bounty would not be granted under the amendatory act for a well sunk within the prescribed limit.

IDEM—INTENTION OF THE LEGISLATURE.—The purpose of the legislature in providing for the payment of bounties by the state for sinking artesian wells was to encourage experiments in places where it was uncertain whether water could be obtained, and it did not contemplate the payment of bounties for wells sunk in places where it had been practically demonstrated by bounties paid by the state that artesian water could be obtained. (Concurring opinion of BIGELOW, J.)

ORIGINAL application for a writ of mandate.

The facts sufficiently appear in the opinion.

*Sardis Summerfield,* for Relator.

I. The amendatory act of March 7, 1889, by implication repeals sections one and six of the original act. (*Ely* v. *Holton,* 15 N. Y. 595; *C. P. R. R. Co.* v. *Shackelford,* 63 Cal. 261.)

II. The amendatory act contemplates the payment of bounties for an entirely different class of wells from those provided for in the original act. Neither the purpose for which they were sunk nor the depth of wells was material under the original act, but bounty wells under the amendatory act must be sunk for stock or agricultural purposes, and must be at least two hundred feet deep.

III. The appropriation has not lapsed. An appropriation by the legislature is the dedication of a specific portion of the state funds for a specific purpose. There is no suggestion in the amendatory act of March 7, 1889, that the legislature intended to limit the appropriation to any particular time, and unless such intention is apparent in the act it should be held to be a continuous appropriation. The intention of the legislature controls. (*State ex rel. Wilkins* v. *Hallock,* 20 Nev. 73.)

*J. D. Torreyson,* Attorney General, for Respondent.

I. The appropriation for the years 1889-90 has lapsed. The intention of the legislature was that it should only be an appropriation for the fiscal years. This is shown by the re-enactment of section six. Had the legislature intended the appropriation of 1887 to be a permanent appropriation it would never have re-enacted section six, as there would have been no necessity for so doing. (*State ex rel. Wilkins* v. *Hallock,* 20 Nev. 73; 20 Ind. 328.)

II. Relator could not get a bounty under the act of 1887 because the two wells are within ten miles of each other. Relator knew of the existence of the Dusang well, and knew that artesian water could be obtained upon this quarter section of land, and with this knowledge sinks his well and claims bounty. The Dusang well having received bounty, relator is not entitled to bounty under the amendatory act of 1889, because his well is situated in the same county as the Dusang well, which had already received bounty.

By the Court, MURPHY, J.:

An act of the legislature was approved March 5, 1887 (Stat.

1887, p. 119), entitled "An act to encourage the sinking of arte-
sian wells." The first section reads as follows: "Every person,
firm, company, corporation or association that shall, after the pas-
sage of this act, commence the sinking of artesian wells, shall be
entitled for sinking such artesian well, where flowing water is
obtained, the sum of one dollar and twenty-five cents per foot,
to be paid in the manner provided for in section 4 of this act;
*provided,* that no bounty shall be paid on any well which does
not furnish seven thousand gallons of water each twenty-four
hours, flowing continuously for thirty days; *and provided, fur-
ther,* that bounties shall not be paid in more than three wells in
each county within this state; *and provided, further,* that no two
wells shall receive a bounty if located within ten miles of each
other." Sections 2, 3, 4 and 5 relate to the manner of proceed-
ing and drawing the money from the treasury after the flow of
water is obtained. Section 6 appropriates ten thousand dollars
from the general fund to pay bounties.

On the 7th day of March, 1889, the legislature amended sec-
tion 1 of the act of 1887 (Stats. 1889, p. 84): "Section 1.
Every person, firm, company, corporation or association that
shall, after the passage of this act, commence the sinking of
artesian wells, for stock or agricultural purposes, shall be en-
titled for sinking such artesian well, where flowing water is
obtained, the following specified sums: For the first two
hundred feet, one dollar and twenty-five cents per foot; for the
third one hundred feet, one dollar and fifty cents per foot; for
the fourth one hundred feet, two dollars per foot; for the fifth
one hundred feet, two dollars and twenty-five cents per foot;
for the sixth one hundred feet, two dollars and fifty cents per
foot; for the seventh one hundred feet, three dollars per foot;
for the eighth one hundred feet, three dollars and fifty cents
per foot; for the ninth one hundred feet, four dollars per foot;
for the tenth one hundred feet, four dollars and fifty cents per
foot; for all depths exceeding one thousand feet, five dollars
per foot for each and every foot below the said one thousand
feet, and an additional bounty of one thousand dollars for
every well sunk to the depth of one thousand feet or more;
*provided,* that such well shall furnish twenty thousand gallons
of water each twenty-four hours, flowing continuously for thirty
days; said sums to be paid in the manner provided for in sec-
tions four and five of this act; *provided,* that no bounty shall be

paid on any well which does not furnish seven thousand gallons of water in each twenty-four hours, flowing continuously for thirty days; *and provided, further*, that no two wells shall receive a bounty if located within the same county. Where two or more wells within the prescribed limits apply for a bounty, the well which first furnished the amount of water required by this act shall be entitled to the bounty allowed by this act." Section 6 re-appropriates the sum of ten thousand dollars from the general fund to pay bounties. Sections 2, 3, 4 and five of the act of 1887 are not copied into the statute of 1889, but are merely referred to by the sections, nor is there any repealing clause in the act of 1889.

The admitted facts are, that on or about the 24th day of May, 1890, the relator and one S. L. Cahoon made and subscribed to the affidavit, as required by section 2 of the act of 1887, and proceeded to sink a well; that said well was sunk to a depth of eight hundred and ten feet, was five inches in diameter and flowed one hundred thousand gallons of water in each twenty-four hours for thirty days continuously; that relator made his report to the board of county commissioners of Lander county, as required by section 3, and received a certificate from said board, as provided for in section 4 of the act of 1887; that a claim for one thousand seven hundred and sixty-five dollars, as bounty, was presented to the state board of examiners, and was on the 9th day of July, 1891, approved and allowed by said board. On the 10th day of July, 1891. said claim, with the indorsements thereon, was presented to the state controller with the request that he should draw his warrant on the treasurer for the amount therein specified, but to draw the said warrant the controller refused and still refuses to do so, giving as his reasons for such refusal that the appropriation had lapsed, and that there was another well sunk on the same quarter section of land, for which a bounty had been paid prior to the sinking of the well by the relator. Whereupon the relator sued out the alternative writ of *mandamus* herein.

The attorney for relator argues that the amendatory act of 1889 repealed section one of the act of 1887, and that when the relator commenced sinking his well in 1890, the law under which he proceeded should be read and construed as if no law on the subject had existed prior to the 7th day of March, 1889; and the fact that a well had been sunk on the same quarter

section of land, and a bounty paid thereon, could not and did not operate to defeat the right of the relator to collect the bounty for the sinking of his well.

We cannot agree with him in any such conclusion. The act of 1887 was passed to encourage and aid if possible in developing the resources of the state, and to encourage the expenditure of labor and money in seeking to discover water for domestic, agricultural, and grazing purposes; and as an incentive for such expenditures, the state agreed by said act to aid in such developments by the payment of bounties. In 1889 the legislature must have become satisfied that the act of 1887 was too liberal in its provisions and not sufficiently restrictive. They therefore amended section one, and the said amendment is, in its terms, more guarded, definite and restrictive. But the provisions of the act of 1887 are not repealed. The effect of an amendment of a statute made by enacting that the " act is hereby amended so as to read as follows," and then incorporating the changes or additions with that portion of the former act that is retained, is not that the portions of the amended act which are merely copied from the original act are to be considered as having been repealed and again re-enacted. The part which remains unchanged is to be considered as having continued to be the law from the time of its first enactment. (*Holbrook* v. *Nichol*, 36 Ill. 167; *Kamerick* v. *Castleman*, 21 Mo. App. 590; *Parsons* v. *Circuit Judge*, 37 Mich. 290; *Walker* v. *State*, 7 Tex. App. 256; Suth. St. Const. Sec. 134.)

It is a fundamental rule that repeals of statutes by implication are not favored in law. To constitute the repeal of an act of the legislature by implication, the new statute must cover the whole subject matter of the old one. There must be an irreconcilable repugnancy between the two acts, and the repugnancy must be plain and unavoidable. Under the act of 1887, where a well was sunk from which was obtained a flow equaling seven thousand gallons of water in each twenty-four hours for thirty days continuously, the party sinking such a well was entitled to receive, as bounty, one dollar and twenty-five cents per foot, regardless as to the depth of such well. The provision was enacted in this manner to induce, if possible, parties to sink wells, and to demonstrate the fact that there was water flowing beneath the surface of the soil that could be brought to the surface by the boring of artesian wells. That fact having

been established, the legislature of 1889, wishing to encourage the sinking of deep wells, fixed the bounty, " for the first two hundred feet, one dollar and twenty-five cents per foot," and increased the bounty for each and every hundred feet thereafter sunk, until the well reached the depth of one thousand feet; and in case the well was sunk below one thousand feet, and flow of water to exceed twenty thousand gallons in each twenty-four hours was obtained, the person sinking such well was entitled to receive an additional bounty of one thousand dollars.

Under the act of 1887, bounties could be obtained on three wells in one county, provided their locations were more than ten miles apart. Under the act of 1889, but one well in each county could receive a bounty. We are satisfied that, where a party had sunk a well and obtained a bounty under and by virtue of the act of 1887, that it was not the understanding nor intention of the legislature that another person could have entered upon the same quarter section of land, sink a well and obtain the bounty under the provisions of the act of 1889. We are supported in this conclusion from the reading of the closing paragraph of section one of the act of 1889, which reads: "Where two or more wells within the prescribed limit apply for a bounty, the well which first furnished the amount of water required by this act shall be entitled to the bounty allowed by this act." The prescribed limits, under the act of 1887, ten miles; under the act of 1889, one in each county; amount of water, seven thousand gallons. The relator having sunk his well on a quarter section of land where one had been sunk by other parties, and the bounty as provided for under the act of 1887 paid, he cannot recover a bounty for sinking his well. From the view we have taken of this case, it is unnecessary to pass upon the question raised as to whether the appropriation of ten thousand dollars reverted to the general fund on the 31st day of December, 1890, or not. *Mandamus* denied.

BIGELOW, J., concurring:

By the amendatory act of 1889, amending section one of the act of 1887, it is directed that "every person * * * that shall after the passage of this act," sink an artesian well under certain circumstances, shall be entitled to the bounty therein provided for. Counsel contends that as the relator's well was

the first one sunk in the county after the passage of the amendatory act, he is by its express language entitled to the bounty, notwithstanding the admitted fact that there had previously been another well sunk upon the same quarter section of land, for which a bounty has been claimed and paid under the law as it stood previous to the amendment.

All laws are to be so construed as to arrive, if possible, at the intention of the legislature; and the question here is whether that body intended by the amendatory act to wipe out all that had been done under the original act—to begin anew as it were—and pay a bounty upon the first well that might be sunk in each county after its passage.

1.  As to the time when the well was to be sunk, the amendment merely repeats the language of the original act.  Under our constitution, where a section of an act is amended the section must be re-enacted and published at length.  The effect of this is that all in the original section which is not repeated in the amendment is repealed; the new provisions in the amendment take effect from the time of its passage and approval, and the provisions which are repeated stand the same as though there had been no amendment or change.  (*Railroad Co.* v. *Shackelford,* 63 Cal. 261; *Ely* v. *Holton,* 15 N. Y. 598.)

This being the rule of statutory construction, it would seem clear that the words, " after the passage of this act," being so repeated, must be held to refer to the original act, and any well sunk after the date of that act—March 5, 1887, upon which a bounty had been paid, must be counted as being within the law, and to that extent excluding the payment of bounty on any other.  As, under the amendatory act, bounty can only be paid on one well in each county, the previous payment excludes the claim made for the relator's well.

2.  As is well known, the sinking of an artesian well, where no other has been sunk, is always in the nature of an experiment.  They are expensive, and private parties hesitate about sinking them until some one has demonstrated that water can be obtained.  It is clear that the purpose of the legislature in offering the bounty was to encourage the making of these experiments in places where it was uncertain whether water could be obtained.  The wells upon which bounty was to be paid were for the purpose of prospecting the country and finding, if possible, a belt of artesian water.  If such a belt was found,

others would then sink wells, and thereby extensive tracts of land might be reclaimed and rendered fertile.

That this was the purpose of the legislature is evident from the manner in which the act is guarded. If it was once determined that artesian water could be obtained in a section of country, the purpose of the legislature was secured, and there was no occasion to pay for sinking another well. Consequently, we see under the original act, that the wells must be at least ten miles apart, and under the amendment that bounty can be paid upon but one well in a county. In this case it appears that it had already been practically determined by an experiment, for which the state had paid, that artesian water could be obtained upon the same quarter section of land in which the relator's well was sunk. Sinking another well there does not come within either the letter or the spirit of either act. It would be strange indeed, if bounty could be drawn which is not payable under the terms of either the original or the amended act.

3. There is nothing in the suggestion that the first well should be excluded from consideration because the purpose of the law was changed by the amendment. It is true that under the amendments wells must be sunk for stock or agricultural purposes, while the original act did not limit the purpose, but the limitation does not exclude the counting of the first well.

Nor is it true that, under the amendment, bounty could not have been drawn upon the first well, because it was only one hundred and fifty-three feet in depth. It is not necessary under the latter act that the well should be sunk at least two hundred feet before bounty can be obtained upon it. I concur in the judgment denying the *mandamus*.