[No. 6926.   Decided October 19, 1907.]

THE STATE OF WASHINGTON, *on the Relation of J. H. Davis,*
*Plaintiff,* v. C. W. CLAUSEN, *as State Auditor,*
*Respondent.*[1]

STATUTES— AMENDMENTS — CONSTRUCTION — STATES — OFFICERS—
TERM OF OFFICE—INCREASE OF SALARY.  Laws of 1907, amending the
law of 1901, relating to the state board of control, "so as to read as
follows," does not repeal the provisions in the former (omitted from
amendment) fixing the term of office and the time for the beginning
thereof, where it was evident that the intent of the amendment was
to change the salary and a few of the duties, and to deal with an
existing office, not to create a new one; hence the salary of a member
of the board under the old law cannot be increased during his term
of office as fixed thereby, although he was reappointed on the taking
effect of the amendment before his old term had expired.

Application filed in the supreme court September 13, 1907,
for a writ of mandate to the state auditor to compel the issu-
ance of a warrant increasing the salary of a member of the
state board of control.   Denied.

*Vance & Mitchell,* for relator.

*The Attorney General,* and *A. J. Falknor, Assistant,* for
respondent.

DUNBAR, J.—The plaintiff is a member of the state board
of control, having been originally appointed to said office
under the laws of 1901.  He was appointed on April 1, 1905,
for a full term of six years, and filed his bond and oath of
office at that time, and at all times since has been a duly act-
ing and qualified member of the state board of control.   The
legislature of 1907 passed an act, chapter 166, amending the
act of 1901 in relation to the board of control.   In said act
the salary of the members of the board of control was raised
from $2,000, as it was established under the act of 1901, to

[1]Reported in 91 Pac. 1089.

$3,000 per annum. The governor, acting upon the theory that under the provisions of the act of 1907 there should be a reconstitution of the board, appointed the relator to the office of member of the board of control on the 12th day of June, 1907. The relator deeming that he was entitled to the salary provided for under the act of March, 1907, presented his bill for the amount which would be due him under said act; but the defendant, the state auditor, has refused to honor the requisition, insisting that he should pay only $2,000 salary under the old act by reason of the fact that the relator was a member of the board of control at the time of the passage of the new act.

It is the contention of the relator that that provision of the law of 1901 which prescribed the time at which the term of office begins, having been repealed and not having been brought forward into the amendatory act, is no longer the law, and that consequently the provisions of the new act required a reconstitution of the board by the executive, whose terms take effect from the time of the constitutional operation of the new law. The facts are undisputed. Section 1 of chapter 119 of the Laws of 1901 is as follows:

"The governor of the state shall, by and with the advice and consent of the senate, appoint a bi-partisan board consisting of three citizens of the state, not more than two of whom shall belong to the dominant political party, as members of the board to be known as the 'state board of control.' The members of said board shall hold office, as designated by the governor, for two, four and six years respectively and be removable by the governor in his discretion. Subsequent appointments shall be made as provided and, except to fill a vacancy, shall be for a period of six years. The chairman of the board for each year shall be the member whose term of office first expires. All vacancies that may occur on said board while the legislature is not in session shall be filled by appointment by the governor and shall be submitted to the senate for consideration at the next session following the appointment. Each member of the said board shall receive a salary of two thousand dollars ($2,000) per annum, and in

addition shall be paid for all actual expenses incurred in discharge of his duties, said expenses not to exceed the sum of one thousand dollars ($1,000) per annum for each member of the said board."

Section 1 of the amendatory act is an exact duplicate of § 1 of the original act of 1901, excepting that it provides that each member of the board shall receive a salary of $3,000 instead of $2,000. Section 3 of the act of 1901 provides that the board of control shall assume its duties on April 1, 1901. Section 3 of the 1901 act commences as follows:

"The board of control shall assume its duties on April 1, 1901, and shall have full power to manage and govern the Western Washington Hospital for the Insane, Eastern Washington Hospital for the Insane, the State Penitentiary, State Reform School, the State Soldiers' Home and the State School for Defective Youth, subject only to the limitations contained in this act," etc.

The amendment is as follows:

"That section three (3) of said act be amended to read as follows: Sec. 3. The state board of control shall have full power to manage and govern the following public institutions;"

and then proceeds to mention the same institutions that are mentioned in the original act; and the provisions of the sections are the same, excepting that the amendatory act gives the board of control the custody and control of the state capitol buildings and grounds, with certain powers over them that had theretofore been exercised by another state officer, and gives them certain supervision over the University of Washington and the normal schools of the state. The other sections amended are, in all practical respects, the same as the original sections, except in relation to the amount of salaries which are to be paid subordinate officers, and the expenses incurred by the members of the board of control, and minor details.

The provisions of our constitution bearing on this subject

are as follows: Section 25 of art. 2 provides that the compensation of any public officer shall not be increased or diminished during his term of office. Section 25 of art. 3 provides that the compensation of state officers shall not be increased or diminished during the term for which they shall have been elected. Section 13 of art. 4 provides that judges of the supreme court and judges of superior courts shall, at stated times during their term of office, receive for their services the salaries prescribed by law therefor, which shall not be increased after their election nor during the term for which they shall have been elected. This provision is not in point excepting to show the intention of the framers of the constitution in relation to the changing of the salaries of any kinds of officers in the state. Section 8 of art. 11 provides that, "the salary of any county, city, town or municipal officer shall not be increased or diminished after his election, or during his term of office." So that it will be seen that it was a positive policy of the constitution, expressed in every possible way, that the salaries of officers should not be increased during their term of office. This wise provision was no doubt intended to prevent pernicious activity on the part of the office holders of the state being brought to bear upon the members of the legislature—a wise provision which must not be construed out of existence or evaded by legislative enactment.

The relator invokes the doctrine announced by Sutherland on Statutory Construction (2d ed.), § 247, that, where an act is amended or a section by the use of the words "so as to read as follows," and the substituted provision is inserted without specification of the changes intended to be made, the parts of the former law left out are repealed, and that inasmuch as § 3 is amended without providing for the commencement of the term of the office, the legislative intent was clear to abolish the office and establish a new office by the reenactment. The rule contended for, of course, is the general rule; but

the true intent of the legislature must be gathered from the whole scope of the enactment and the reasons which appear for making the enactment. In this case, instead of the omission tending to show the legislative intent to establish the commencement of the term at some future time, the fact that no future time was mentioned or fixed shows that the legislature did not intend to create a new office, but understood that it was legislating with reference to an office already in existence, and with reference only to certain material changes which it desired to make in the law. The amendment to §3 shows clearly that the only change intended was the change in regard to salary.

This question has been passed upon by this court in *Mudgett v. Liebes*, 14 Wash. 482, 45 Pac. 19, and while the contention in that case was the opposite of the one in this, viz., that an officer could be deprived of the salary which attached to his office at the time he was elected, by subsequent repealing legislation, the principle announced was the same. In that case Sutherland on Statutory Construction, 134, was cited, where it was said that:

"Where there is an express repeal of an existing statute and a reenactment of it at the same time, or a repeal and a reenactment of a portion of it, the re-enactment neutralizes the repeal so far as the old law is continued in force. It operates without interruption where the re-enactment takes effect at the same time. . . . Offices are not lost; corporate existence is not ended; inchoate statutory rights are not defeated; a statutory power is not taken away, nor criminal charges affected by such repeal and reenactment of the law on which they respectively depend."

And the case of *State ex rel. Blossom v. Horton*, 21 Nev. 300, 30 Pac. 876, was approvingly quoted, where it was said:

"The effect of an amendment of a statute made by enacting that the 'act is hereby amended so as to read as follows,' and then incorporating the changes or additions with that portion of the former act that is retained, is not that the portions of the amended act which are merely copied from the original

act are to be construed as having been repealed and again re-enacted. The part which remains unchanged is to be considered as having continued to be the law from the time of its first enactment."

The whole amendatory act convinces us that it was not the intention of the legislature to create a new office or to abolish in any manner the provisions of the act in relation to the commencement of the term of office, but that it was simply the intention to amend the law in respect to the amount of the salary and with respect to the added powers and duties which it was deemed wise to impose upon the board of control.

We think the case falls plainly within the inhibition of the constitution in relation to increasing the salary of public officers, and that the auditor was justified in refusing to issue the warrant.

The writ will be denied.

HADLEY, C. J., RUDKIN, ROOT, MOUNT, and CROW, JJ., concur.