[No. 15701.  Department One.  June 7, 1920.]

THE STATE OF WASHINGTON, *on the Relation of* C. H. *Younger, Plaintiff,* v. C. W. CLAUSEN, *as State Auditor, Respondent.*[1]

STATES (11)—OFFICERS (43)—SALARY—INCREASE DURING TERM—ADDITIONAL DUTIES—STATUTES. The state labor commissioner having previously been vested with extensive powers and duties with reference to enforcing laws enacted for the safety of workmen, which were of the same general nature as those imposed upon him by chapter 130, Laws of 1919, p. 309, his salary could not be increased during his term of office, in violation of Const., Art. 2, § 25, on account of the additional duties imposed upon him by that act, as such duties were merely incidental, collateral or germane to his prior duties.

Application filed in the supreme court December 30, 1919, for a writ of mandamus to compel the state auditor to issue certain salary warrants to the state labor commissioner.  Denied.

*W. V. Tanner,* for relator.

*The Attorney General* and *G. H. Bucey,* for respondent.

MAIN, J.—This is an original application in this court for a writ of mandamus. The relator is the state labor commissioner and the respondent the state auditor. The relator claims the right to have issued to him certain salary warrants by virtue of chapter 130, p. 309, of the Laws of 1919. The relator's term as

[1]Reported in 190 Pac. 324.

commissioner of labor of the state of Washington began on April 3, 1917, and under the statute, Rem. Code, § 6550, his term of office was for a period of four years. The salary of the office, at the time of his appointment, was $2,400 per annum. It thus appears that, at the time the act of 1919 became effective, under which the warrants in this action are claimed, the relator was the commissioner of labor, serving a term which would not expire until April 3, 1921. The respondent declined to issue the warrants demanded, relying upon · § 25 of art. 2 of the state constitution, which, among other things, provides that:

". . . nor shall the compensation of any public officer be increased or diminished during his term of office."

The question here is not whether the legislature may increase the powers and duties of an officer during his term. That this may be done is well settled. The real question is whether the legislature may increase the powers and duties of an office and allow additional compensation therefor during the term that an officer may be serving, notwithstanding the constitutional provision. The relator claims that his added powers and duties under the act of 1919 are extrinsic and foreign to his duties under the prior laws, and that therefore the constitutional provision does not apply. The respondent claims that the new duties of the relator under the act of 1919 are incidental, collateral or germane to the duties which he was required to perform under the prior law, and that therefore the salary increase during his present term is inhibited by the constitution. The general rule supported by the authorities is that, where new duties are added to the office during the term and the act fixes the compensation therefor, the constitutional inhibition does not apply if

such new duties are extrinsic or foreign to the prior duties. On the other hand, if the new duties are incidental, collateral or germane to the duties which the officer was required to perform under the prior law, the salary increase cannot be sustained. The question is not so much over the statement of the rule as it is the application thereof. Probably the best statement of the rule will be found in §§ 862 and 863 of Mecham on Public Officers, as follows:

"An officer who accepts an office, to which a fixed salary or compensation is attached, is deemed to undertake to perform its duties for the salary or compensation fixed, though it may be inadequate, and if the proper authorities increase its duties by the addition of others germane to the office, the officer must perform them without extra compensation. Neither can he recover extra compensation for incidental or collateral services which properly belong to or form a part of the main office. . . .

"Where, therefore, a public officer is employed to render services in an independent employment, not germane or incidental to his official duties, . . . he may recover for such services."

Inquiry, then, must be directed to whether the powers and duties of the relator under the act of 1919 were extrinsic or foreign to the duties which he was required to perform under the then existing law, or whether they are incidental, collateral or germane thereto. The powers and the duties of the relator under the act of 1919 will first be reviewed, and these will be followed by the review of his duties under the law as it was at the time of his appointment.

The act of 1919 (Laws of 1919, ch. 130, p. 309), is entitled, "An act relating to industrial insurance, to medical and surgical care of injured workmen, providing certain means for the prevention and avoidance of injuries to workmen," and amending and adding cer-

tain sections to Remington & Ballinger's Code. Under
§ 4 of this act, it is the duty of every employer to fur-
nish a place of work which shall be as safe for the
workmen therein as may be reasonable and practicable
under the circumstances, surroundings and conditions.
The employer is also required to furnish and use such
safety devices and safeguards and to adhere to and
use such practices, means and methods as, under the
circumstances, are reasonable and practicable in order
to "render the work and the place of work safe." The
employer is further required to comply with such
standards of safety for the place of work and such
safety devices and systems of education for safety as
shall be from time to time prescribed for such em-
ployer by the state safety board. Section 6 of the act
creates a state safety board which shall consist of two
members other than chairman thereof. The commis-
sioner of labor, under § 7, is required to act as an
advisory member of the state safety board, but in such
capacity only, and shall not be allowed to vote on any
question coming to the board. It is expressly provided
in the section that the commissioner of labor shall "not
be included in the designation 'State Safety Board'
wherever used." Under § 8, the state safety board, for
all work other than coal mining, is required to make
and promulgate standards of safety, to wit:

"(1) To make safe the place of work of workmen,
same to be termed 'safe place standards';

"(2) Of safety devices and safeguards to make safe
machines, tools, apparatus and appliances, same to be
termed 'safety device standards';

"(3) Of educational systems for the education and
training of employer and workman in the appreciation
and avoidance of danger and in the maintenance and
use of safe place and safety device standards."

Section 34 provides that the state labor commis-
sioner, under the provision and control of the state

safety board, shall have the sole charge of the ''enforcement of safe place and safety device standards (other than for the mining of coal) and of inspection and certification thereof.'' Under § 50, it is made the duty of the labor commissioner to inspect the establishment of work of every employer engaged in extra-hazardous work in the state (other than coal mines), as often as directed by the state safety board, but not less than once every four months. Section 39 covers the matter of the additional salary for the labor commissioner, and is as follows:

''For the performance of his duties under section 6604-81 (Sec. 34) the state labor commissioner shall receive a salary of one hundred and fifty dollars per month in addition to his salary as state labor commissioner.''

Reading § 34 and § 39 together, it appears that the labor commissioner's additional salary, under the act, was for the performance of his duties in the enforcement of safe place and safety device standards (other than for coal mines) and of the inspection and certification thereof. The warrants which the relator is seeking to have issued to him by the state auditor are for salary for certain months claimed to be due him under the statute. The duties imposed upon the labor commissioner by the act will be found in §§ 7 and 34, above referred to, and may be set out as follows:

(1) To act in an advisory capacity only to the state safety board. (2) Under the supervision and control of the safety board, enforce (a) safe place standards, (b) safety device standards, other than for coal mining, (c) inspection and certification thereof.

Speaking generally, these duties have to do with the safety and welfare of employees and workmen. The purpose of the safe place standards and the safety

device standards is to make "the work" and "the place of work" safe and thus avoid unnecessary accidents and injuries.

Reference will now be made to the duties of the state labor commissioner under the law as it was at the time of his appointment and which he is still required to perform. Under title L of Remington's 1915 Code, certain acts of the legislature are codified under the general title of Labor Law. Under this title there are a number of separate chapters, among which are those entitled "Bureau of Labor," "Female and Child Labor," "Health and Safety of Employees in Factories, etc.," "Arbitration and Disputes," "Workmen's Compensation Act." Two chapters of the code not codified under the above general title of the labor law are chapter 8 (Rem. Code, § 5482 et seq.), "Regulation and Conduct of Bakeries," under the general title of "Health," and chapter 8 (Rem. Code, § 8213 et seq.), under the general title of "Navigation." The general duties of the labor commissioner are defined in § 6553 of Remington's Code, which is one of the sections entitled "Bureau of Labor." Under this section it is made the duty of the labor commissioner to enforce all laws regulating employment of children, minors, and women, or laws established for the protection of the health, lives and limbs of operators in workshops, factories, mills and mines, on railroads and other places, and "all laws enacted for the protection of the working classes." In certain respects it is made the duty of the commissioner to enforce laws "hereafter to be enacted." It is further made the duty of the commissioner to collect, assort, arrange and present in biennial reports to the legislature statistical details

"relating to all departments of labor in the state; to the subjects of corporations, strikes or other labor difficulties; to trade unions and other labor organiza-

tions and their effect upon labor and capital; and to such other matters relating to the commercial, industrial, social, educational, moral and sanitary conditions of the laboring classes, and the permanent prosperity of the respective industries of the state as the bureau may be able to gather.''

By § 6571-4, which is one of the sections under the chapter headed ''Female and Child Labor,'' the labor commissioner is made an *ex-officio* member of the ''Industrial Welfare Commission,'' the duties of which commission, as set forth in § 6571-3, are

''to establish such standards of wages and conditions of labor for women and minors employed within the state of Washington, as shall be held hereunder to be reasonable and not detrimental to health and morals, and which shall be sufficient for the decent maintenance of women.''

By § 6590 of Remington's Code (1915), which is one of the sections under the chapter entitled ''Health and Safety of Employees in Factories, etc.,'' it is made the duty of the commissioner of labor to examine

''all factories, mills, workshops, storehouses, ware-rooms, stores and buildings and the machinery and appliances therein contained to which the provisions of this chapter are applicable for the purpose of determining whether they do conform to such provisions, and of granting or refusing certificates of approval, whether requested to do so or not.''

Further provisions of the chapter provide certain. standards for factories, mills, workshops, etc., for the safety and welfare of employees. By § 6599 of Remington's Code (1915), which is one of the sections under the chapter entitled ''Arbitration and Disputes,'' the labor commissioner is required to perform certain duties with reference thereto. By § 5487, Remington's 1915 Code, which is one of the sections under the chapter entitled ''Regulation and Conduct of Bakeries,'' it

is made the duty of the commissioner of labor to inspect bakeries and issue a certificate to the owner, if such be the fact, that he is complying with all the provisions of the chapter. The commissioner is also authorized to issue orders to improve the condition of a bakery. Under § 8213, which is one of the sections under the chapter entitled "Regulation of Steam Vessels, etc.," the commissioner of labor is charged with the administration of the provisions of the act. The act provides for a system of inspection and regulation of certain steam vessels which are properly subject to state regulation.

It will thus be seen that, prior to the passage of the act of 1919, the powers and duties of the labor commissioner with reference to enforcing laws enacted for the safety of workmen were extensive. It may be said of these laws that the general purpose running through them was the welfare and safety of the employees or workmen. Under these laws, the labor commissioner was required to make certain inspections and enforce certain standards for the safety of work and the places of work. He was required to issue certificates as therein provided. He was also required to enforce all laws enacted "for the protection of the working classes." These duties were of the same general nature as those imposed upon him by the law of 1919. As already pointed out, that law, as well as the prior laws which defined his duties, were enacted for the general purpose of the safety and welfare of employees or workmen. In acting in an advisory capacity to the state safety board, under the act of 1919, he was but serving the same general purpose that the prior laws required of him. It is true that, under the act of 1919, his powers and duties have been increased, but this fact alone will not sustain an act of the legislature,

under the constitutional provision above referred to, which increases his compensation during his term of office. *State ex rel. Davis v. Clausen,* 47 Wash. 372, 91 Pac. 1089; *State ex rel. Funke v. Board of Commissioners,* 48 Wash. 461, 93 Pac. 920. In the case first cited, the powers and duties of the state board of control were increased and the salary of the members was increased. It was there held that the members of the board were not entitled to the increased compensation by reason of the fact that the powers and duties had been increased. Before such increase in salary can be sustained it is necessary, as already pointed out, that the duties under the new act shall be extrinsic or foreign to those to be performed under the existing law and shall not be incidental, collateral or germane thereto.

It is said, however, that under the act of 1919, the labor commissioner is required to perform certain duties relative to the industrial insurance commission, such as that at the end of each calendar year it shall be his duty to certify to such commission the compliance or noncompliance with the safety standards by employers. From this it is argued that the labor commissioner is thereby required to perform duties in connection with another department of the government, because, under the prior law, he was not required to perform any duties in connection with the industrial insurance commission. It cannot be held, however, that the duties which the commissioner of labor is required to perform in connection with the industrial insurance commission are extrinsic and foreign to the duties which he was required to perform under the prior law. It will hardly be denied that one of the purposes of the workmen's compensation act (Rem. Code, § 6604-1 *et seq.*), was to promote the welfare and

safety of employees or workmen. This is the same general purpose which is sought to be accomplished by other labor laws. The case of *State ex rel. Seattle v. Carson*, 6 Wash. 250, 33 Pac. 428, is readily distinguishable. It was there held that a law, passed during the term of a county treasurer, which imposed upon him the duty of the collection of city taxes and allowed him a salary for such purpose in the sum of $500 a year in addition to the salary otherwise provided by law, was not subject to the constitutional provision providing that the salary of a public officer should not be increased or diminished during his term of office. The reason for the holding was that the collection of city taxes was a matter which was "entirely outside" of his duties as county treasurer for which his previous salary had been fixed. The functions of the county do not bear that close relation to those of a city as the purposes of the labor laws of the state, including the workmen's compensation act, do one to the other. In *Spokane County v. Allen*, 9 Wash. 229, 37 Pac. 428, 43 Am. St. 830, commenting upon the doctrine of the *Carson* case, it was said:

"We do not think that the doctrine enunciated in that case should in any event be extended, though it is plainly distinguishable from the case at bar."

To apply the doctrine of the *Carson* case to the case now before us would require an extension of the doctrine of that case. It is the positive policy of the constitution, expressed in a number of ways, that the salaries of officers should not be increased during their term of office. This is made apparent by reference to other similar provisions, but which are not here directly involved. Section 25 of art. 2, which is the section here immediately involved, provides that the compensation of any public officer shall not be in-

creased or diminished during his term of office. Section 25 of art. 3 provides that the compensation of state officers shall not be increased or diminished during the term for which they shall have been elected. Section 13 of art. 4 provides that the judges of the supreme court and judges of the superior courts shall severally, at stated times, during their continuance in office, receive for their services the salaries prescribed by law therefor, which shall not be increased after their election, nor during the term for which they shall have been elected. Section 8 of art. 11 provides that the salary of any county, city, town or municipal officer shall not be increased or diminished after his election or during his term of office. After reviewing these various provisions of the constitution in *State ex rel. Davis v. Clausen*, 47 Wash. 372, 91 Pac. 1089, *supra*, it was said:

"So that it will be seen that it was a positive policy of the constitution, expressed in every possible way, that the salaries of officers should not be increased during their term of office. This wise provision was no doubt intended to prevent pernicious activity on the part of the office holders of the state being brought to bear upon the members of the legislature—a wise provision which must not be construed out of existence or evaded by legislative enactment."

A similar comment is found in *State ex rel. Port of Seattle v. Wardall*, 107 Wash. 606, 183 Pac. 67, as follows:

"Other courts have said that such provisions also have an additional purpose, namely, to prevent the salary fixing body from rewarding their friends and punishing their enemies, which they were sometimes wont to do, by increasing the salaries of those in favor and decreasing the salaries of those whose actions did not meet with the approval of that body."

A careful consideration of the duties imposed upon the labor commissioner by the law of 1919, in comparison with those which he was required to perform under the prior law, leads to the conclusion that his duties under the 1919 act are not extrinsic and foreign to his previous duties, but that they are germane thereto. To review the authorities in detail, cited in the briefs, would unduly extend this opinion, already probably unreasonably long. The question has frequently been before the courts of other states under similar constitutional provisions. In some cases it is held that the duties created by the later act are extrinsic and foreign; while in others, that they are incidental, collateral or germane, each line of cases applying the general rule as above quoted from Mecham. It is apparent that, in determining whether the duties are extrinsic and foreign or collateral and germane, each case must depend, to a considerable extent, upon its own facts. As a type of the cases holding duties to be extrinsic and foreign, the case of *State v. Roddle,* 12 S. D. 433, 81 N. W. 980, may be cited. In that case, by act of the legislature, the secretary of state was made a member of what was referred to as the ''Brand and Mark Committee,'' and compensation was allowed him for his duties in connection with that committee in addition to his salary as secretary of state. It was there held that his duties as a member of the ''Brand and Mark Committee'' were extrinsic to those which he was required to perform as secretary of state. As a type of the cases holding that duties are germane or collateral, the case of the *Board of Commissioners of Creek County v. Bruce,* 51 Okla. 541, 152 Pac. 125, may be referred to. In that case, additional duties were conferred upon county clerks of the state, in that they were required to issue hunting licenses. It was there

held that such duties were germane to the office of county clerk. Not all the cases support the general rule as first above quoted. For instance, the supreme court of Missouri holds that, where new and additional duties are imposed upon an officer and the act provides compensation therefor, such act is not subject to the constitutional provision prohibiting increase in the pay of an officer during his term of office. *State ex rel. Harvey v. Sheehan,* 269 Mo. 421, 190 S. W. 864. But this court has taken a different view of a similar constitutional inhibition, as pointed out in the *Funke* and *Davis* cases, *supra,* where it is held that new and additional duties are not sufficient to sustain the application of the act to the officer holding under a term at the time of its passage.

This opinion can be no better concluded than by a quotation from the *Funke* case, *supra,* as follows:

"The increase of compensation by those statutes and also by the one now before us was, no doubt, in each instance a meritorious thing for the legislature to do, having reference to future office incumbents. But the constitutional provision as to present incumbents must not be so construed in the interest of seeming expediency or even apparent necessity as shall practically amount to an evasion of the organic law. That the constitutional provision exists is not only true, but it is also true that it is so clear and is founded upon such practical wisdom as calls for no elastic effort to construe it."

The writ will be denied.

HOLCOMB, C. J., MITCHELL, PARKER, and MACKINTOSH, JJ., concur.