[No. 15324.    Department Two.    July 21, 1919.]

THE STATE OF WASHINGTON, *on the Relation of the Port of Seattle, Respondent,* v. NORMAN M. WARDALL, *as Auditor of King County, Appellant,* THOMAS S. LIPPY, *Intervener.*[1]

OFFICERS (43) — SALARY — INCREASE DURING TERM — STATUTES. Const., art. 2, § 25, and art. 11, § 8, providing that the legislature shall never grant any extra compensation to any public officer, and that the salary of any public officer shall not be increased or diminished after his election or during his term of office, applies to public officers elected for a fixed term to serve without compensation, and accordingly prohibits the granting of substantial compensation thereto after their election, and renders Laws 1917, p. 502, § 2, providing for compensation to port commissioners serving without compensation inapplicable as to commissioners theretofore elected.

MUNICIPAL CORPORATIONS (71)—OFFICERS (43)—SALARY—INCREASE DURING TERM—STATUTES. Const., art. 11, § 8, providing that the

[1]Reported in 182 Pac. 67.

salary of any county or municipal officer shall not be increased or diminished after his election or during his term of office, prohibits the granting of compensation to a port commissioner, by vote of the district pursuant to Laws 1917, p. 502, § 2, although he was elected and inducted into office subsequent to the passage of that act, where he took office prior to the district vote authorizing the salary; since the constitutional prohibition operates against the district as well as against the state.

Appeal from an order of the superior court for King county, Gilliam, J., entered February 13, 1919, granting a writ of mandate to compel the issuance of salary warrants to the commissioners of the port of Seattle. Reversed.

*Fred C. Brown* and *Chas. Ethelbert Claypool,* for appellant, cited: 22 Ruling Case Law, §§ 228, 229, p. 534; *State ex rel. Davis v. Clausen,* 47 Wash. 372, 91 Pac. 1089; *State ex rel. Maltbie v. Will,* 54 Wash. 453, 103 Pac. 479, 104 Pac. 797; *Butler County v. James,* 25 Ky. Law 801, 76 S. W. 402; *Folk v. St. Louis,* 250 Mo. 116, 157 S. W. 71; *Mudgett v. Liebes,* 14 Wash. 482, 45 Pac. 19.

*Preston, Thorgrimson & Turner,* for respondent Port of Seattle, contended, that the constitutional provision applies only to officers that were theretofore salaried officers. *State ex rel. Thurston County v. Grimes,* 7 Wash. 445, 35 Pac. 361; *State ex rel. Ross v. Clausen,* 47 Wash. 607, 92 Pac. 453; *State ex rel. Funke v. Board of Com'rs,* 48 Wash. 461, 93 Pac. 920.

The constitutional provision is only applicable to increases or decreases after a compensation had been once provided. *Harper v. Board of Com'rs of Oklahoma County,* 149 Pac. (Okl.) 1102; *State ex rel. Reardon v. Harper,* 33 Okl. 572, 123 Pac. 1038; *Commonwealth v. Carter,* 21 Ky. Law 1509, 55 S. W. 701; *Purcell v. Parks,* 82 Ill. 346; *Hurt v. Morgan County,* 166 Ky. Law 364, 179 S. W. 255; *Fox v. Lantrip,* 162 Ky.

178, 172 S. W. 133; *Rucker v. Supervisors,* 7 W. Va. 661; *Union Loan & Trust Co. v. Southern California Motor Road Co.,* 51 Fed. 840.

*Peters & Powell,* for intervener.

FULLERTON, J. — The legislature of the state of Washington, at its biennial session of 1911, provided for the formation of municipal corporations called port districts. Laws of 1911 p. 412; Rem. Code, § 8165-1 *et seq.* The act defined with much minuteness the powers and duties of such corporations, and provided that its powers should be exercised through a port commission consisting of three members, who, after the first election, should hold office for a term of three years. Section 5 of the act provided that such commissioners should "serve without compensation."

Pursuant to the provisions of the act, a port district was organized covering the territory comprising the county of King, called the "Port of Seattle." Commissioners were duly elected for the terms prescribed, and they and their successors in office have continually since exercised the powers of the corporation.

In 1917, the legislature passed an act amendatory of section 5 of the original act, the amendment, in so far as it is pertinent to the question here presented, being as follows:

"All port commissioners shall serve without compensation save and except in port districts having a population of two hundred thousand (200,000) or more inhabitants, and in such port districts each commissioner shall receive a compensation of three thousand dollars ($3,000) per annum, said compensation to be paid monthly out of the funds of the port district, in the same manner as are the salaries of the employees of the port district, the population of a port district to be fixed and determined by the last official census of

the United States for the purposes of this section. The foregoing provision relating to compensation of port commissioners is subject to the following proviso: The question of whether port commissioners in port districts having a population of two hundred thousand (200,000) or more inhabitants shall receive compensation as herein provided shall be submitted at the first general election after the organization of any port district having said population of two hundred thousand (200,000) or more inhabitants, or, in the case of any port district already established and having said population then at a special election of the said port district at the time of the next general county election in the county in which said port district is located, held after the taking effect of this act. There shall be printed on the ballot at such election the words 'In favor of compensation for port commissioners in the sum of three thousand dollars each per annum' and the words 'Against compensation for port commissioners in the sum of three thousand dollars each per annum.' If at such election the majority of the voters voting on said proposition shall vote in favor of such compensation, the port commissioners of such port district shall receive compensation in the sum of three thousand dollars per annum as provided herein and in any case where a port district with a population of two hundred thousand (200,000) or more inhabitants, is in existence at the time this act becomes effective and such port district votes for a compensation as hereinbefore provided, the port commissioners of such district elected and serving shall begin to receive compensation with the calendar month succeeding the month in which the vote is taken." Laws 1917, p. 502, § 2.

Acting pursuant to the amendment, the question whether the port commissioners should receive compensation as authorized therein was submitted to the electors of the district at the general election held on November 5, 1918, at which election the vote was in favor of allowing compensation. At this time the port commissioners were C. E. Remsberg, whose term of

office commenced on the second Monday in January, 1916, Robert Bridges, whose term of office commenced on the second Monday in January, 1917, and T. S. Lippy, whose term of office commenced on the second Monday in January, 1918.

At the appropriate time following the election, the port commissioners directed the county auditor of King county to draw warrants in favor of the then commissioners, in payment of the salaries allowed by the act, for the month of December, 1918, the calendar month succeeding the month in which the vote was taken. The auditor, conceiving the act inoperative as to the commissioners in office, refused to comply with the order, whereupon the port instituted proceedings in mandate in the superior court of King county to compel him so to do. On the hearing, the superior court granted a writ of mandate, and this appeal is from its order.

The auditor based his refusal to issue the warrants upon the constitution of the state. The provisions cited as directly applicable are found in § 25 of art. 2, and § 8 of art. 11, of that instrument. These read:

"Sec. 25. The legislature shall never grant any extra compensation to any public officer, agent, servant, or contractor after the services shall have been rendered or the contract entered into, nor shall the compensation of any public officer be increased or diminished during his term of office." Const., art. 2, § 25.

"Sec. 8. The legislature shall fix the compensation by salaries of all county officers, and of constables in cities having a population of five thousand and upwards, except that public administrators, surveyors, and coroners may or may not be salaried officers. The salary of any county, city, town, or municipal officers shall not be increased or diminished after his election or during his term of office, nor shall the term of any such officer be extended beyond the period for which he is elected or appointed." Const., art. 11, § 8.

Other provisions cited as indicative of the general policy of the framers of the constitution are § 25 of art. 3, which provides that the ''compensation for state officers shall not be increased or diminished during the term for which they shall have been elected,'' and § 13 of art. 4, which provides that the salaries of the judges of the supreme and the superior courts ''shall not be increased after their election, nor during the term for which they shall have been elected.''

These provisions of the constitution, it may be premised, since they are prohibitory in their nature, are self-executing, binding alike upon the authority empowered to fix salaries or compensation of public officers, whether that authority be the legislature, a board or commission, or, as in this instance, the legislature with the concurrence of the electorate affected by the increase. It is plain, also, that these commissioners are public officers within the meaning of the constitutional inhibition. By the act creating port districts, such districts are made municipal corporations. The commissioners are the officers thereof, in whom is vested the authority to exercise the powers of the corporation, and they hold by fixed terms. It is further true, we think, that had the original act given the commissioners a mere nominal compensation, a substantial compensation, such as is here provided, would be an increase within the meaning of the constitutional provisions. The question for consideration is, therefore, simple in its elements. Since the commissioners are serving without compensation, is the award to them of a substantial compensation within the constitutional inhibition?

In support of the enactment, the commissioners' learned counsel call attention to the rule that courts will not declare an act of the legislature to be violative of the constitution unless it is clearly and plainly so,

and to the rule that every intendment is in favor of the constitutionality of the act, and if, after due consideration, a doubt remains as to a conflict with the constitution, the doubt is resolved in favor of the act. They then argue that it is evident that the present case presents a condition not contemplated by the framers of the constitution; that the constitution speaks of an increase and decrease in salary or compensation; that, where nothing is granted, there can be no decrease, and that. to grant something where nothing was granted before is not to grant an increase within the usual meaning of that term; that we cannot speak of nothing as growing or becoming augmented; that there must first be something in order that there may be more of it; and that the thought conveyed by the term "increase" is comparative, which necessarily presupposes a positive; that is to say, it presupposes that something existed which is thereby made more, and does not presuppose the creation of something where nothing existed.

But, plausible as this reasoning may seem, we think it overlooks the purpose and intent of the constitutional inhibitions. These inhibitions, it will be observed, are wide in their application. They cover the case of every public officer holding by a fixed term, whether that officer be elected or appointed and whether his duties conduce much or little to the public welfare; a provision, said Judge Dunbar in *State ex rel. Davis v. Clausen*, 47 Wash. 372, 91 Pac. 1089,

"no doubt intended to prevent pernicious activity on the part of office holders of the state being brought to bear upon the members of the legislature—a wise provision which must not be construed out of existence or evaded by legislative enactment."

Other courts have said that such provisions also have an additional purpose, namely, to prevent the

salary-fixing body from rewarding their friends and
punishing their enemies, which they were sometimes
wont to do, by increasing the salaries of those in favor
and decreasing the salaries of those whose actions did
not meet with the approval of that body. This court
has often had cause to regret that the debates of the
constitutional convention have never been made acces-
sible. These debates would certainly throw a flood of
light upon the meaning of the doubtful clauses of the
constitution, by making it clear why a given form of
words were chosen to express an idea when another
form, seemingly more appropriate, could have been
employed. But the purposes of the clauses in question
are not doubtful. If they do not have the suggested
meaning they are wholly without purpose. Giving
them this meaning, it is at once apparent that it is as
much a violation of their spirit and purpose to grant a
salary where none was before provided, as it is to in-
crease an inadequate salary. In other words, it is as
much against the spirit and purpose of the constitu-
tion to permit public officers to solicit a salary during
their terms where none has been provided, as it is to
solicit an increase of a provided salary, since the one
is as much a violation of the public policy involved as
is the other. We are impressed with the remarks of
Mr. Justice Dickey in *Purcell v. Parks,* 82 Ill. 346.
There the learned judge said:

"It seems to me it can not properly be held, that the
granting of a compensation to an officer, who, by law,
has none, is not, in substance, increasing his compensa-
tion. As well might it be said that, to permit a tenant
to prove that his landlord had no title, would be no
violation of the rule, that 'a tenant can not dispute his
landlord's title,' and this upon the ground that so do-
ing is not disputing his title, but merely showing that
'he had no title to dispute.' A vicious practice had
prevailed in legislatures and county boards, of inter-

meddling with the compensation of officers after their election, increasing that of friends and reducing that of those not in favor. This was the evil to be cured. To permit a county board to lie by until after the election of a county officer, and afterwards provide a large compensation for the officer, if a friend, and a meagre compensation if otherwise, is, I think, to permit a plain violation of this constitution. If this be not so, the county board may, at any time, by an order made just before an election of a county clerk, rescind all orders theretofore made fixing the compensation of that officer, and then, after the election is over, may fix a large compensation if the successful candidate be in favor, or a small compensation if he be not in favor, and thus the constitution may, in this regard, become a dead letter.''

Our attention has been called to no case from this court where the question has been presented. We have held, however, that the inhibitions of the constitution relate to public officers receiving salaries payable to them from the public treasury as such, and not to officers compensated by fees paid to them by the person for whom he performed the service; holding that the former were within the inhibitions against change, while the latter were not. Since the inhibition of the constitution is against any increase or decrease in the ''compensation'' of a public officer, as well as against any increase or decrease in the ''salary'' of such an officer, it is difficult to see any sound reason for the distinction made in the cases cited; but conceding them to be correctly decided, we cannot conceive that either line argues that an officer elected for a fixed term under a statute providing that he shall serve without compensation, may afterwards, and during the term for which he is elected, be awarded a substantial salary.

Nor are we cited to any case from another jurisdiction where the precise question has been presented. In

Illinois during an early period, and in Kentucky more recently, the laws provided that the salaries of certain of the county officers should be fixed by county boards at a meeting preceding the time of the election of such officers, and it was held by the courts of these states that, where the duty was neglected or omitted prior to the election, the boards could lawfully fix such salaries after the election. In Illinois (see the case above cited) the decision was rested squarely on the principle that to provide a salary where before there was none was not to increase the salary of an officer during the term for which he was elected. The Kentucky cases seem to be rested on a different principle, although in some of the cases language can be found which indicates that this was one of the reasons which influenced the court's conclusion. But we cannot think these cases in point on the facts here presented. There the law itself provided for a salary, making it the mandatory duty of the boards to fix the amount, which was required to be reasonable. Clearly, therefore, the officers could not be deprived of that which the law contemplated they should have by the mere inaction or refusal to act on the part of the boards. But here the law not only did not provide for a salary or for compensation, but, on the contrary, expressly provided that there should be no compensation. To give them compensation during the terms for which they were elected is plainly a direct violation of the spirit and purpose, if not the letter, of the constitution.

From the dates given in the statement, it will be seen that commissioners Remsberg and Bridges were each elected and inducted into office prior to both the passage of the act providing the salary and its approval by the electors of the port district. As to them the rule announced is strictly applicable. The case of commissioner Lippy is somewhat different. He was

elected and inducted into office subsequent to the passage of the act, but prior to its approval by the electors. It is contended on his behalf that, since the legislature, prior to his election, authorized the port district to pay him a salary at its option, the constitutional inhibitions are satisfied, since the vote of the district was only necessary to make the act operative. But the act was not complete in itself. Alone, it did not create the salary. It required the favorable vote of the electors of the district to make the act effective in this respect. In other words, the act simply empowered the district to pay a salary to its commissioners if it so desired. Since the constitutional prohibitions operate against the district as well as the state, it must follow, we think, that the rule of the constitution is as applicable to this commissioner as it is to the others.

Our conclusion is that the order of the trial court must be reversed, and the cause remanded with instructions to deny the application for the writ of mandate.

It is so ordered.

Holcomb, C. J., Parker, and Mount, JJ., concur