[No. 28615. Department Two. May 11, 1942.]

THE STATE OF WASHINGTON *on the Relation of Gus J. Jaspers et al., Appellants,* v. JAMES G. WEST, *as Treasurer of Wahkiakum County, Respondent.*[1]

'Reported in 125 P. (2d) 694.

*Mitchell Doumit,* for appellants.

*J. Bruce Polwarth,* for respondent.

SIMPSON, J.—This is an action commenced in the superior court of Wahkiakum county for a peremptory writ of mandamus to compel the treasurer of that county to pay warrants issued for the compensation of of the commissioners of public utility district No. 1 of Wahkiakum county. The superior court denied the relief asked for and dismissed the action. Plaintiffs have appealed. The assignments of error are in denying their right to a peremptory writ and in dismissing the action.

The undisputed facts are that appellants were the commissioners of public utility district No. 1, a municipal corporation of Wahkiakum county, all having been elected for three-year terms, J. I. Maki in 1938, Gus J. Jaspers in 1938, and C. R. Worrel in 1940. The commissioners, upon a date not disclosed in the record, passed a resolution which reads as follows:

"Public Utility District No. 1 of Wahkiakum County, Washington shall pay each of its commissioner compensation at the rate of Six Dollars ($6.00) per day, or major part thereof, devoted to the business of the district, and for days upon which he attends meetings of the Commission of Public Utility District No. 1 of Wahkiakum County; or meetings attended by one or more commissioners of two or more districts called to consider business common to them."

Claims and vouchers were then approved allowing each appellant, as commissioner, per diem compensation in the amount of six dollars for the session held May 5, 1941, and warrants were issued by the auditor

of the district therefor. When the warrants were presented to the respondent, he refused payment.

This action was then instituted, based upon § 6, chapter 245, p. 818, Laws of 1941 (Rem. Supp. 1941, § 11616-5), which reads:

"Each public utility district may provide by resolution for the payment of compensation to each of its commissioners at a rate not exceeding $10.00 for each day or major part thereof devoted to the business of the district, and days upon which he attends meetings of the Commission of his own district or meetings attended by one or more Commissioners of two or more districts called to consider business common to them. Each Public Utility District Commissioner shall be reimbursed for reasonable expenses actually incurred in connection with such business and meetings, including his subsistence and lodging while away from his place of residence and mileage for use of personal automobile at the rate of five cents (5¢) per mile."

The law, Rem. Rev. Stat., § 11612 [P. C. § 4498-18], in force at the time of the election of appellants, provided "commissioners shall serve without compensation."

The question presented in this case is whether, under the provisions of our state constitution, appellants could be allowed the compensation as provided for by the act of 1941.

Art. II, § 25, of our state constitution provides:

"The legislature shall never grant any extra compensation to any public officer, agent, servant, or contractor after the services shall have been rendered or the contract entered into, nor shall the compensation of any public officer be increased or diminished during his term of office."

Art. XI, § 8, provides:

"    .  .  .  The salary of any county, city, town, or municipal officer shall not be increased or diminished after his election or during his term of office, nor shall

the term of any such officer be extended beyond the period for which he is elected or appointed."

It is appellants' contention that the type of compensation contemplated by the constitutional prohibitions is that type wherein the payment is dependent upon the time and not the amount of the services rendered, and that the per diem remuneration mentioned in the act is compensation for the amount of services rendered. As a basis for their contention, they call our attention to the following cases: *State ex rel. Thurston County v. Grimes,* 7 Wash. 445, 35 Pac. 361; *Cox v. Holmes,* 14 Wash. 255, 44 Pac. 262; *State ex rel. Stratton v. Maynard,* 35 Wash. 168, 76 Pac. 937; and *Gobrecht v. Cincinnati,* 51 Ohio St. 68, 36 N. E. 782, 23 L. R. A. 609.

In the *Grimes* case, *supra,* this court held that the provision of Art. II, § 25, did not apply to officers who receive specific fees for specific services. The decision cited with approval *Board of Supervisors v. Hackett,* 21 Wis. 620, which held that a constitutional provision such as ours applies only to those officers who "receive a fixed salary out of the public treasury" of the state. It must be noted that neither in the *Grimes* case, nor any case subsequently decided, has this court followed the rule laid down in Wisconsin.

The decision in the *Cox* case, *supra,* interpreted Art. XI, § 8. In that case, a county superintendent of schools sought to recover additional compensation of three dollars for each school visited, as provided by a legislative act which allowed three dollars for each school visited and ten cents per mile traveled in making the visits. This court affirmed the superior court in holding that the superintendent could recover the charges for travel but could not, under the constitutional provision, recover the per diem charge. In deciding the case, it was said:

"We think that the system which the framers of the constitution intended to provide by § 8, *supra*, [Art. XI] was that of 'fixed' and established 'compensation by time,' (*State ex rel. Murphy v. Barnes*, 24 Fla. 29, 3 South. 433), as distinguished from the system of specific fees for specific services which had theretofore prevailed; and, although the word 'salary' is sometimes used to denote compensation paid for a particular service, it was used in the constitution to mean 'a payment dependent on the time and not on the amount of the service rendered' by the officer. *Thompson v. Phillips*, 12 Ohio St. 617."

In the *Stratton* case, *supra*, this court held that the attorney general could not obtain ten per cent of the amount of all judgments collected by legal process in addition to his annual salary. The percentage allowance had been provided by the territorial legislature. In passing upon the question presented, this court declared:

"So, we think here that the whole idea of the constitution was of compensation by salary, as distinguished from the fee system, which had theretofore prevailed, and that the word 'salary' was used in the constitution to mean a payment dependent on the time, and not upon the amount of the services rendered; or, in other words, when the salary for a year was prescribed, it was meant that the prescribed salary should be the compensation for a year."

In *Gobrecht v. Cincinnati, supra*, it was held that an increase in the compensation of an officer increased during his term was not prohibited by a constitutional provision which stated:

"The general assembly, in cases not provided for in this constitution, shall fix the term of office, and the compensation of all officers; but no change therein shall affect the salary of any officer during his existing term, unless the office be abolished."

The cases just cited, with the exception of the Ohio case, do not sustain the theory advanced by appellants.

Our cases do no more than hold that fees charged for specific services do not come within the constitutional prohibition and may be changed at any time.

A person who accepts a public office does so with the full knowledge of the statute providing the compensation. If the law does not provide a compensation or make a definite provision that no compensation shall be allowed, the office is deemed to be an honorary one and the services gratuitous. 22 R. C. L. 532; Mechem on Public Officers, 577, § 856.

The statement that each commissioner shall be compensated "at a rate not exceeding $10.00 for each day or major part thereof devoted to the business of the district" is synonymous with the statements in the constitutional provisions relative to extra compensation and salary. The terms salary and compensation import the idea of compensation for personal services and not the repayment of money necessarily expended in the discharge of the duties of the office. Throop on Public Officers, 428, § 441.

We are not inclined to adopt the theory advanced by appellants for the reason that the framers of the constitution had clearly in mind that compensation for services rendered must not be changed during the term regardless of whether the official is paid by the year, month, or upon a per diem basis. 22 R. C. L. 526, § 218.

Following are some cases which lay down the rule that officers such as appellants are not entitled to the compensation which is provided by an act passed during their term of office.

In *State ex rel. Port of Seattle v. Wardall*, 107 Wash. 606, 183 Pac. 67, it appears that a port commission of three members were elected at a time when the law (Laws of 1911, p. 412, Rem. Code, § 8165-5) provided

that they should "serve without compensation." Subsequently, under authorization of an amendment, Laws of 1917, p. 502, § 2, the commissioners were allowed compensation by virtue of the action of the voters of the port district. This court held that, in view of the provisions of the constitution contained in Art. II, § 25, and Art. XI, § 8, the commissioners could not receive compensation during their then term of office. In speaking of the constitutional provision, we stated:

"These provisions of the constitution, it may be premised, since they are prohibitory in their nature, are self-executing, binding alike upon the authority empowered to fix salaries or compensation of public officers, whether that authority be the legislature, a board or commission, or, as in this instance, the legislature with the concurrence of the electorate affected by the increase.

"These inhibitions, it will be observed, are wide in their application. They cover the case of every public officer holding by a fixed term, whether that officer be elected or appointed and whether his duties conduce much or little to the public welfare; a provision, said Judge Dunbar in *State ex rel. Davis v. Clausen,* 47 Wash. 372, 91 Pac. 1089,

" 'no doubt intended to prevent pernicious activity on the part of office holders of the state being brought to bear upon the members of the legislature—a wise provision which must not be construed out of existence or evaded by legislative enactment.'

"We have held, however, that the inhibitions of the constitution relate to public officers receiving salaries payable to them from the public treasury as such, and not to officers compensated by fees paid to them by the person for whom he performed the service; holding that the former were within the inhibitions against change, while the latter were not."

In *State ex rel. Younger v. Clausen,* 111 Wash. 241, 190 Pac. 324, the relator was the state labor commissioner appointed April 3, 1917, for a term of three

years at a salary of twenty-four hundred dollars per annum. The legislature, at its 1919 session, enacted chapter 130, which provided for an increase in the duties and salary of the labor commissioner. It was held by this court that relator was not entitled to receive the extra salary. In passing upon the question presented in that case, it was said:

"The real question is whether the legislature may increase the powers and duties of an office and allow additional compensation therefor during the term that an officer may be serving, notwithstanding the constitutional provision. . . . Probably the best statement of the rule will be found in §§ 862 and 863 of Mecham on Public Officers, as follows:

" 'An officer who accepts an office, to which a fixed salary or compensation is attached, is deemed to undertake to perform its duties for the salary or compensation fixed, though it may be inadequate, and if the proper authorities increase its duties by the addition of others germane to the office, the officer must perform them without extra compensation. Neither can he recover extra compensation for incidental or collateral services which properly belong to or form a part of the main office.' "

The opinion concluded as follows:

"This opinion can be no better concluded than by a quotation from the *Funke* case, *supra* [48 Wash. 461, 93 Pac. 920], as follows:

" 'The increase of compensation by those statutes and also by the one now before us was, no doubt, in each instance a meritorius thing for the legislature to do, having reference to future office incumbents. But the constitutional provision as to present incumbents must not be so construed in the interest of seeming expediency or even apparent necessity as shall practically amount to an evasion of the organic law. That the constitutional provision exists is not only true, but it is also true that it is so clear and is founded upon

such practical wisdom as calls for no elastic effort to construe it.' "

See, also, *State ex rel. Bagley v. Clausen*, 111 Wash. 254, 190 Pac. 329; *State ex rel. Bergin v. Yelle*, 11 Wn. (2d) 151, 118 P. (2d) 807; *State ex rel. Henneford v. Yelle*, 12 Wn. (2d) 434, 121 P. (2d) 948; *Thompson v. Hofstatter*, 265 N. Y. 54, 191 N. E. 772; 22 R. C. L. 532.

The case of *Gay v. Glendale*, 41 Ariz. 207, 16 P. (2d) 971, has a direct bearing on this case. The decision of the court conforms to the conclusion we have reached. In that case, the city of Glendale, having officers serving under a law which did not allow compensation to its mayor and council, changed its form of government. Thereafter the city council passed an ordinance which provided for compensation to the mayor and members of the city council. In holding that the officials were not entitled to receive the pay provided for by the new ordinance, the court cited our case of *State ex rel. Port of Seattle v. Wardall*, 107 Wash. 606, 183 Pac. 67, and quoted with approval the following statement from *City Council of Newburyport v. Mayor of Newburyport (Murphy v. Page)*, 241 Mass. 575, 136 N. E. 70:

"To establish by original action a salary where hitherto none whatever existed is to make an increase. It augments the income of the recipient."

and then stated:

"We have been cited to no cases which hold to the contrary, and we think both on reason and authority that the granting of compensation to any officer after he has commenced to serve the term for which he has been chosen, when no compensation was provided by law before he assumed the duties of his office, is an increase of compensation within the constitutional provision above cited."

We are clearly of the opinion that the law providing for compensation to commissioners of public utility dis-

tricts cannot be applied to those who were holding office at the time the 1941 act became effective.

We affirm the judgment of the superior court.

ROBINSON, C. J., BEALS, JEFFERS, and BLAKE, JJ., concur.