J. ALLEN ANDERSON ET AL. *v.* THE PENSION AND RETIREMENT BOARD OF THE CITY OF MILFORD ET AL.

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued October 3—decision released December 3, 1974

*Gerald F. Stevens,* for the appellants (named plaintiff et al.).

*Stephen E. Ronai,* for the appellees (defendants).

BOGDANSKI, J. The plaintiffs, retired members of the Milford police department, brought this action for damages claiming that the defendant Pension and Retirement Board had improperly computed their pension benefits. After a hearing, the Court of Common Pleas rendered judgment for the defendants. From that judgment the plaintiffs have appealed to this court assigning error in the court's conclusions, in the overruling of the plaintiffs' claims of law, and in its rulings on evidence.

The facts[1] can be summarized as follows: In managing the pension and retirement system for the Milford police department, the defendant board is governed by certain provisions of a collective bargaining agreement between the city of Milford and Local 899, American Federation of State, County and Municipal Employees. That agreement provides that each employee of the Milford police department, fifty years of age or over, who has served for at least twenty-five years, shall, upon written request, be retired by the board on an annual pension equal to two percent of his "average annual pay" for each year of service. "Average annual pay" is then defined as "the average of all compensation including but not limited to . . . base salary, holiday pay, longevity pay, overtime pay, etc., which the employee receives during his or her three (3) highest paid fiscal years."

---

[1] The plaintiffs have assigned error in the court's refusal to find certain facts claimed to be undisputed. The requested additions have not been made since they will not affect the result. *Lewis* v. *Lewis,* 162 Conn. 476, 481, 294 A.2d 637.

Another agreement between the city and the Milford Police Union Local 899 provides, in part, that "[e]ach member of the Department upon retirement . . . shall be financially compensated, i.e., paid in cash for seventy-five (75%) percent of all unused sick days credited to the member's sick leave account at the time of his retirement." Pursuant to that agreement, each of the plaintiffs received a lump sum payment for his unused sick days immediately prior to retirement. These lump sum payments were received along with each of the plaintiffs' regular wages and were labeled "adjusted pay." Although the city deducted pension contributions and withholding taxes from each of the lump sum payments, the board refused to consider those unused sick day payments in computing the plaintiffs' pension benefits.

It is the plaintiffs' contention that the language of the collective bargaining agreement expressed a clear intention to include all forms of compensation in the definition of "average annual pay" and that payments for accumulated sick days are "compensation" within the contract definition of "average annual pay." The trial court concluded, however, that the plaintiffs had "failed to prove by a fair preponderance of the credible evidence that the parties intended to include 'sick pay' in determining the retirement benefit under the definition of 'average annual pay,' " and that the use of the word "etc." was so ambiguous that parol and documentary evidence was admissible as an aid to the court in the interpretation of the contract.

"The intention of the parties to a contract is to be determined from the language used interpreted in the light of the situation of the parties and the cir-

cumstances connected with the transaction. The question is not what intention existed in the minds of the parties but what intention is expressed in the language used." *Ives* v. *Willimantic,* 121 Conn. 408, 411, 185 A. 427; *Schubert* v. *Ivey,* 158 Conn. 583, 589, 264 A.2d 562; *Sturtevant* v. *Sturtevant,* 146 Conn. 644, 647, 153 A.2d 828; *Buckley* v. *Buckley,* 144 Conn. 403, 409, 133 A.2d 604. The words used by the parties "must be accorded their common meaning and usage where they can be sensibly applied to the subject matter of the contract." *Beach* v. *Beach,* 141 Conn. 583, 589, 107 A.2d 629; *Sturtevant* v. *Sturtevant,* supra, 647–48.

It was unnecessary for the trial court to go beyond the language used by the parties in the collective bargaining agreement. In that agreement "average annual pay" is defined by the words "all compensation" followed by the phrase "including but not limited to base salary, holiday pay, longevity pay, overtime pay, etc." That phrase contains words of illustration, not limitation. Thus the use of the abbreviation "etc." does not inject any ambiguity into the meaning of "all compensation." It merely indicates that the list of examples preceding it are not exhaustive. See 1 Am. Jur. 2d, Abbreviations, § 8; Black's Law Dictionary (4th Ed.) 652.

"Compensation" is a generic term when used with reference to services and has been defined as "salary, fees, pay, remuneration for official services performed, in whatever form or manner, or at whatsoever periods the same may be paid." *State ex rel. Emmons* v. *Farmer,* 271 Mo. 306, 311, 196 S.W. 1106; 15A C.J.S., Compensation, p. 104. See, e.g., *State* v. *Bland,* 91 Kan. 160, 167, 136 P. 947; *Scroggie* v. *Scarborough,* 162 S.C. 218, 226, 160 S.E. 596; *State*

*ex rel. Jaspers* v. *West,* 13 Wash. 2d 514, 519, 125 P.2d 694. The words "all compensation," then, show that the parties intended all forms of pay, salary and remuneration to be included in the computation of "average annual pay," provided such amounts are in exchange for official services rendered.

That payment for unused sick days falls within the meaning of "all compensation" cannot be questioned: The agreement between the parties states that "[e]ach member . . . shall be financially *compensated* . . . for . . . unused sick days" (emphasis added); the stipulation of facts submitted by the parties describes those payments for unused sick days as "adjusted pay" and "compensation"; and the city deducted pension contributions and withholding taxes from them. The service rendered to the city in exchange for those payments was the member's additional presence on the job. In *Willets* v. *Emhart Mfg. Co.,* 152 Conn. 487, 490–91, 208 A.2d 546, this court said that "[separation pay] is a kind of accumulated compensation for past services and a material recognition of their past value." Lump sum payments for unused sick days are no less compensation for past services.

Since the words chosen by the parties are fairly susceptible of only one interpretation, there was no need for the trial court to apply additional rules of interpretation. *Moore* v. *Serafin,* 163 Conn. 1, 10, 301 A.2d 238. The construction of a contract cannot be varied because of inconvenience to the parties. *Whitaker* v. *Cannon Mills Co.,* 132 Conn. 434, 440, 45 A.2d 120. The intent expressed by the parties must be given effect. *Moore* v. *Serafin,* supra. It thus follows that the lump sum payment for unused sick days made to each plaintiff and designated as

"adjusted pay" is compensation which each plaintiff employee received during his last fiscal year and should have been included by the board in the computation of "average annual pay."

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiffs to recover, in accordance with this opinion, such damages as they may prove on a new trial limited to the issue of damages.

In this opinion the other judges concurred.