[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiffs, State of Connecticut, State of Connecticut Department of Administrative Services ("DAS") and State of Connecticut Department of Mental Health ("DMH"), bring this appeal pursuant to General Statutes 4-183 and 5-202 (l). Plaintiffs are appealing a decision of the Employees' Review Board ("ERB") made pursuant to General Statutes 5-202. The ERB found that a rent increase imposed upon two non-collective bargaining physician managers, Dr. Marietta G. Sonido and Dr. Odhikadu Deverajan, who occupied state-owned housing, was unlawful discrimination because the increase was substantially greater than the increase imposed on similarly situated physicians and psychiatrists in the local collective bargaining unit.
JURISDICTION
Appeals to courts from administrative agencies exist only under statutory authority. Killingly v. Connecticut Siting Council, 220 Conn. 516, 521, ___ A.2d ___ (1991). A statutory right to appeal may only be taken advantage of by strict compliance with the statutory provisions which create it. Citizens Against Pollution Northwest, Inc. v. Connecticut Siting Council, 217 Conn. 143, 152, 584 A.2d 1183 (1991). Failure to strictly comply with the provisions which create the statutory right to appeal will subject an appeal to dismissal. Killingly v. Connecticut Siting Council, supra, 522. Every presumption favoring jurisdiction should be indulged when a decision as to whether a court has subject matter jurisdiction is required. Id.
A. Procedural History
Plaintiffs name the ERB, Dr. Marietta G. Sonido and Dr. Cdhikadu Deverajan as defendants[1] Sonido and Devarajan initiated the grievance procedure set out in General Statutes5-202 for permanent appointment state employees who are not included in any collective bargaining unit to contest rent increases on the state housing they occupied.[2] On November 15, 1988 and November 21, 1988, respectively, Sonido and Devarajan CT Page 4789 filed grievances pursuant to 5-202 (g) for a preliminary review of their claims.[3]
The first two steps of preliminary review were waived by Sonido's and Devarajan's supervisor and appointing authority (Section 5-202 (g) and (h)). The grievances went directly to the third and final level of preliminary review before the Commissioner of Administrative Services or his designated representative (Section 5-202 (i)). The Office of Labor Relations of the DAS denied the grievances on July 14, 1989. On July 24, 1989 and July 25, 1989, respectively, Sonido and Devarajan elected to appeal to the ERB.
The ERB held a hearing on October 12, 1989 on Sonido's and Devarajan's grievances. The hearing, which was held before three members of the ERB,[4] was continued and concluded on March 16, 1990. The ERB rendered its decision on August 31, 1990.[5]
The ERB ruled that the rent increase was discriminatory and devised a remedy refunding $5,000-$6,000 to Sonido and $3,000-$4,000 to Devarajan.
1. Timeliness
General Statutes (Rev. to 1989) 4-183 provides the procedural guidelines for filing an administrative appeal.
 (b) Proceedings for such appeal shall be instituted by filing a petition in superior court for the judicial district wherein . . . the aggrieved person resides . . . within forty-five days after mailing of the notice of the final decision of the agency. . . . Copies of the petition shall be served upon the agency and all parties of record within thirty days after mailing of such notice . . ., except that service upon an agency may be made by the appellant mailing a copy of the petition by registered or certified mail, postage prepaid, without the use of a sheriff or other officer, to the office of the commissioner of the agency or to the office of the attorney general in Hartford.
General Statutes (Rev. to 1989) 4-183.
The ERB mailed its decision on September 7, 1990. Plaintiffs filed an appeal of the decision on October 16, 1990 praying that the ERB decision be vacated, set aside and reversed. A summons and citation were served on Sonido and the Office of the Attorney General on October 4, 1990. Devarajan was served on October 5, 1990. The court concludes that the appeal was timely filed. CT Page 4790
Plaintiffs filed a supporting memorandum on June 25, 1991; defendants filed an opposing memorandum on November 4, 1991.
Plaintiffs filed an application to stay the decision of the ERB on October 16, 1990 pursuant to General Statutes (Rev. to 1989) 4-183 (c). The stay was granted by the court, O'Neill, J., on February 25, 1991.
2. Aggrievement
A party must prove aggrievement to have standing to appeal under the Uniform Administrative Procedure Act. General Statutes (Rev. to 1989) 4-183 (a); Light Rigging Co. v. DPUC,219 Conn. 168, 172, 592 A.2d 386 (1991). The party claiming aggrievement must demonstrate a specific, personal and legal interest in the subject matter of the decision, rather than a general interest shared by the community as a whole. Id., 173. The party must also establish that this interest has been specially and injuriously affected by the decision. Id. Aggrievement is established if there is a possibility rather than a certainty that some legally protected interest has been adversely affected. State Medical Society v. Board of Examiners in Podiatry, 203 Conn. 295, 300, 524 A.2d 636 (1987). Mere status as a party or participant in an administrative hearing does not by itself constitute aggrievement Hartford Distributors, Inc. v. Liquor Control Commission, 177 Conn. 616,620, 419 A.2d 346 (1979).
Plaintiffs plead in their complaint and argue that subsidized housing is a form of compensation and that the ERB decision interferes with the DAS Commissioner's statutory authority to set and alter compensation schedules or plans, as set out in General Statutes 5-200 (l) and 5-200 (q). They contend that, because substantial rights of the Commissioner and the DAS have been prejudiced, they are aggrieved. Plaintiffs also argue that DMH is aggrieved because DMH's budget is burdened by ERB's order that approximately $13,000 be refunded to Sonido and Devarajan.
Defendants do not address the issue of aggrievement in their brief.
The parties jointly stipulated to the facts regarding aggrievement in a joint stipulation filed with the court on February 26, 1992.
General Statutes 5-200 (l) states in relevant part: "The [DAS] commissioner shall, subject to the approval of the secretary of the office of policy and management, establish compensation schedules or plans pertaining to all state CT Page 4791 employees. . . ." (Emphasis added.) General Statutes5-200 (l).
General Statutes 5-200 (g) states in relevant part:
 The [DAS] commissioner may at any time, subject to the approval of the secretary of the office of policy and management, establish, abolish, divide or combine classes of positions and allocation of classes of positions to the compensation schedule. The commissioner may at any time, subject to the approval of the secretary of the office of policy and management, amend or repeal any portion of any compensation schedule. The commissioner need not conduct any investigation or hearing prior to any such action.
(emphasis added.) General Statutes 5-200 (g).
The DAS Commissioner has clear statutory authority to determine compensation for state employees. The ERB decision affects the Commissioner's statutory authority to establish compensation in the form of housing subsidies. Therefore, both DAS and the Commissioner of DAS have a specific, personal and legal interest that is specially and injuriously affected by the ERB decision. For that reason, DAS and the DAS Commissioner are aggrieved.
The ERB ordered the State to refund $5,000-$6,000 to Sonido and $3,000-$4,000 to Devarajan. Sonido and Devarajan are DMH employees. The ordered refund would come out of DMH's budget. Accordingly, because DMH has a specific, personal and legal interest that is specially and injuriously affected by the ERB decision, DMH is aggrieved, as well.
B. Facts
A review of the record reveals that Sonido and Devarajan are medical doctors and psychiatrists employed by the DMH at Fairfield Hills Hospital, a state mental hospital in Newtown, Connecticut. Sonido and Devarajan are physician managers who are exempt from the local Health Care (P-1) collective bargaining unit.[6] Sonido and Devarajan occupied state-owned housing on the grounds of Fairfield Hills Hospital. The housing was offered as a benefit. Sonido and Devarajan were not required as a condition of employment to reside in state housing. Sonido was paying a biweekly rent of $77.00 for a Five-bedroom, nine-room colonial house with a three-car garage, including utilities. Similarly, Devarajan was paying approximately $51.00 biweekly for a six-room, three-bedroom CT Page 4792 duplex, with a one-car garage, also including utilities.
In 1987, the Commissioner of DAS established a Task Force on state employee housing to reappraise and recommend reassessment of rental rates for state-owned housing. The last appraisal of rental fair market value had been done in 1980-81. The Task Force recommended that rental rates be reassessed at 70 percent of fair market value for state employees residing on institutional grounds and 100 percent of fair market value for residences not on institutional grounds. The reduction of 30 percent from fair market value for employees residing on institutional grounds was to allow for job related calls and visits during off-duty hours and the lack of a traditional neighborhood setting.
The Commissioner adopted the Task Force's recommendations and implemented an increase to 70 percent of fair market rental value for state employees residing on institutional grounds and 100 percent of fair market value for others in September, 1987. The increase was phased in over a three-year period beginning in January, 1988.
The rental increase was directly imposed by the Commissioner on all non-collective bargaining employees. In contract, however, due to the nature of collective bargaining, the Commissioner had to separately secure rental increase agreements with the various unions which had members residing in state housing. Some collective bargaining units agreed outright to a rental increase to 70 percent of fair market value to be phased in over three years. While other units had rent increases to 70 percent of fair market value over three years through binding arbitration.[7] The Health Care Unit (P-1), the collective bargaining unit of Sonido's and Devarajan's counterparts, was successful in obtaining a decision for a limited rental increase from an arbitrator of 25 percent in July, 1989, 10 percent in July, 1990, and 10 percent in June, 1991. The total increase for members of the Health Care Unit (P-1) who reside in state housing was 52 percent.[8]
Sonido's state-owned house, for which she was paying $77.00 per biweekly pay period, was reappraised at a fair market value of $1,600.00 per month. DAS applied a 30 percent reduction because Sonido resided on institutional grounds and raised Sonido's rent to $216.33 biweekly in January, 1988, $365.63 biweekly in January, 1989, and $514.94 biweekly in January, 1990. Devarajan's state-owned house, for which he was paying approximately $51.00 per pay period, was reappraised at $1,250.00 per month. With the 30 percent reduction, Devarajan's rent was raised to approximately $173.00 biweekly in January, 1988, $288.00 in January, 1989, $402.00 in January, 1990.[9]
CT Page 4793 Sonido's total increase was approximately 669 percent. Devarajan's total increase was approximately 788 percent.[10]
Sonido moved out of her state-owned house in June, 1989. Devarajan moved out of his state housing in December, 1989.
The state argued before the ERB that subsidized housing is a form of compensation and that 5-202 (f) explicitly provides that matters involving compensation for duties is excluded from the ERB's jurisdiction. The ERB, rejecting the state's argument, ruled that the legislature did not intend to exclude cases dealing with compensation for duties from its jurisdiction, but rather only cases involving classwide compensation issues. The ERB classified the case at bar as a discrimination case and claimed jurisdiction accordingly.
The ERB defined discrimination as "treating similarly-situated persons differently on a matter of importance." (ERB Decision at 11). Applying the definition, the ERB held that the rent increases imposed upon Sonido and Devarajan constituted unlawful discrimination when compared to the 52 percent increase imposed on their colleagues in the collective bargaining unit. Accordingly, the ERB determined that an increase in rent double the increase charged to members of the bargaining unit, rather than the approximately 700 percent increase implemented by DAS, would be reasonable. Applying such a formula, the ERB concluded that Sonido is entitled to a refund of $5,000-$6,000, and Devarajan is entitled to a refund of $3,000-$4,000. The ERB directed the state to refund the difference between rents actually charged and the amount determined to be reasonable.
ISSUES
A. Scope of Review
General Statutes 4-183, which provides for appeals to the superior court, sets forth the applicable standard of review:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; CT Page 4794 (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
General Statutes (Rev. to 1989) 4-183 (g).
Although the factual and discretionary determinations of administrative agencies are to be given considerable weight by the courts, it is for the courts, and not for administrative agencies, to expound and apply governing principles of law. Connecticut Humane Society v. FOIC, 218 Conn. 757, 762,519 A.2d 395 (1991). Generally, construction and interpretation of a statute is a question of law for the courts where the administrative decision is not entitled to special deference, particularly where the statute has not previously been subjected to judicial scrutiny or time-tested agency interpretations. Haven v. FOIC, 205 Conn. 767, 773-74, 535 A.2d 1297 (1988).
B. Statutory Authority of ERB
Section 5-202 (a), in relevant part, states:
 Any employee who is not included in any collective bargaining unit of state employees and who has achieved a permanent appointment . . . may appeal to the employees' review board if he or she receives an unsatisfactory performance evaluation or is demoted, suspended or dismissed or is aggrieved as a result of unhealthy working conditions or violations involving the interpretation and application of a specific state personnel statute or regulation.
General Statutes 5-202 (a).
The ERB's jurisdiction is limited by 5-202 (f) which states:
 All matters involving examination, including application rejection, type of examination or results, compensation for class or classes or duties, establishment of a new class or classes, compliance with health and safety standards and the Connecticut Occupational Safety and Health Act or alleged discrimination in cases where an appeal has been filed with the human rights commission, shall not he appealable under this section.
(Emphasis added.) General Statute 5-202 (f). CT Page 4795
General Statutes 5-196 (f) provides the statutory definition of compensation: "`Compensation' means the salary, wages, benefits and other forms of valuable consideration earned by and provided to an employee in remuneration for services rendered." (Emphasis added.) General Statutes 5-196 (f).
In 1986, DAS sought an opinion from the Attorney General regarding, inter alia, whether housing constitutes compensation and the commission's authority to establish rents and determine criteria for state housing, subject to the collective bargaining process.
The Attorney General responded:
 It seems clear to us that housing benefits to employees come within the meaning of compensation plans in Conn. Gen. Stat. 5-200 (l). Accordingly, the Commissioner has the authority to establish the benefit and determine its form, as well as the eligibility requirements for the benefit. . . . The Commissioner has the statutory authority to establish rents and eligibility criteria for housing benefits, subject to the approval of the Secretary of the Office of Policy Management.
1986 Conn. Op. Atty. Gen. 303, #86-074, October 2, 1986. The Attorney General also explained that "insofar as any action of DAS in this area implicates employees covered by a collective bargaining agreement, any action of DAS is subject to the bargaining process." Id., 304. Although the Attorney General's opinion is not binding on this court, "it is entitled to careful consideration and is generally regarded as highly persuasive." (Citations omitted.) Connecticut Hospital Assn., Inc. v. Commissioner on Hospitals and Health Care, 200 Conn. 133, 143,509 A.2d 1050 (1986).
The superior court recently decided a case exactly on point as the one at bar. In State of Connecticut v. Employees' Review Board, No. 35-65-02 (Super.Ct., Hartford/New Britain at Hartford, January 3, 1990) [hereinafter Crouse], an assistant warden, Frank M. Crouse, at a correctional institution, filed a grievance with the ERB state-owned housing on the institutional grounds. The rent increase in Crouse was part of the same state-wide housing reassessment and reappraisal by DAS at issue in the case at bar. In Crouse, Judge Berger noted that Crouse's rent increase included a 30 percent discount from fair market value as "`an attempt to allow for interruptions such as job related calls or visits that occur during off-duty hours and for lack of a traditional neighborhood setting or environment."' CT Page 4796 Crouse, supra, 8, citing a memorandum from the DAS commissioner. Judge Berger, relying on the statutory definition of compensation at 5-196(f) (quoted supra at 13) and the definition of compensation as "`salary, fees, pay, remuneration, for official services performed,'" in (Citations omitted.) Anderson v. Pension and Retirement Board, 167 Conn. 352, 355,355 A.2d 283 (1974), ruled that subsided housing is a form of compensation.[11] Id., 9. Judge Berger held:
 Thus, the housing benefit herein can only be construed as a form of valuable consideration . . . provided to the employee in renumeration [sic] for services rendered. CGS 5-196 (f). The phase-in period of three years is likewise another benefit. This court finds, therefore, that the subject of this appeal concerned compensation for duties and the Board should not have entertained this matter.
(Emphasis added.) Id. In accordance, the appeal was sustained and the case remanded to the ERB for action consistent with the decision. Id., 11.
Similarly, in a case decided very recently, State of Connecticut v. Employees' Review Board, No. 70-16-04 (Super. Ct., Hartford/New Britain at Hartford, April 24, 1992) [hereinafter Sulla/Chernovetz], Judge McWeeny held that the ERB lacked jurisdiction to hear grievances regarding Management Incentive Plan bonuses because they are a form of compensation. Sulla/Chernovetz, supra, 9. Judge McWeeny accordingly sustained an appeal by the state of the ERB's decision in that case. Id.
In this instance, Sonido's and Devarajan's subsidized housing benefits are likewise compensation for duties. Issues involving "compensation for duties" are explicitly excluded under 5-202 (f) from the ERB's statutory jurisdiction. For that reason, the ERB did not have jurisdiction to hear Sonido's and Devarajan's grievances.
Employment discrimination by state agencies is statutorily proscribed in General Statutes 46a-70 which states:
 (a) State officials and supervisory personnel shall recruit, appoint, assign, train, evaluate and promote state personnel on the basis of merit and qualifications, without regard for race, color, religious creed, sex, age, national origin, ancestry, mental retardation, learning disability or physical disability, including but not limited to, blindness, unless it is shown by such state officials or CT Page 4797 supervisory personnel that such disability prevents performance of the work involved.
(Emphasis added.) General Statutes 46a-70 (a).
Treating physician managers different from similarly situated physicians in a collective bargaining unit does not constitute unlawful discrimination within the meaning of46a-70 (a). Accordingly, the ERB's attempt to classify Sonido's and Devarajan's grievances as unlawful discrimination is unavailing.
For the foregoing reasons, because the ERB exceeded its statutory authority, this appeal is sustained.
SCHALLER, J.